# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

TROY KING,

      Plaintiff,

      v.                                           Civ. No. 19-255 SCY

ANDREW SAUL, Commissioner of Social
Security,[1]

      Defendant.

## MEMORANDUM OPINION AND ORDER[2]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 13) filed May 31, 2019, in support of Plaintiff Troy King's Complaint (Doc. 1) seeking review of the decision of Defendant Andrew Saul, Commissioner of the Social Security Administration, denying Plaintiff's claim for disability insurance benefits under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. On July 30, 2019, Plaintiff filed his Motion to Reverse and Remand for a Rehearing With Supporting Memorandum. Doc. 18. The Commissioner filed a Response on October 30, 2019 (Doc. 23) and Plaintiff filed a Reply on November 13, 2019 (Doc. 24). The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED.**

---

[1] Andrew Saul was sworn in as Commissioner of the Social Security Administration on June 17, 2019 and is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 4, 8, 9.

## BACKGROUND AND PROCEDURAL RECORD

Claimant Troy King suffers from the following severe impairments: status-post total replacement of the left hip joint; cervicalgia; bipolar disorder; anxiety; and post-traumatic stress disorder (PTSD). Administrative Record ("AR") at 385. Plaintiff obtained his GED in 1997. AR 47. He has past relevant work as a construction worker, welder, and sorter pricer. AR 450.

On February 27, 2013, Mr. King filed a Title XVI application for benefits, alleging disability beginning May 1, 2011. AR 62. His application was initially denied on May 17, 2013, and upon reconsideration on August 6, 2013. AR 72, 85. Mr. White requested a hearing on August 20, 2013. AR 96. Administrative Law Judge ("ALJ") Thomas Cheffins conducted a hearing in Arizona on September 12, 2014. AR 39-60. Mr. King testified telephonically without legal representation. AR 41-43. On December 19, 2014, ALJ Cheffins issued an unfavorable decision. AR 26-34. On April 5, 2016, the Appeals Council denied Mr. King's request for review. AR 1-4.

On June 2, 2016, Mr. King filed a timely appeal with this Court. AR 488-89. On September 17, 2017, United States Magistrate Judge Stephan M. Vidmar reversed and remanded for a rehearing. AR 519-31. Judge Vidmar reversed and remanded after finding the ALJ failed to articulate adequate reasons to disregard the opinion of Mr. King's treating mental health counselor, Gary Hallford. AR 527-28. Judge Vidmar found that the evidence the ALJ cited to disregard these source opinions—Mr. King's lack of hospitalization and conservative mental health treatment—was not substantial evidence. *Id.* Judge Vidmar also found that the opinions of the state agency consultants supported counselor Hallford's opinion on Mr. King's limitations. *Id.* at 528-29.

While Mr. King's appeal was pending in this Court, he filed another application for Title XVI benefits on December 20, 2014 and Title II benefits on August 16, 2016. AR 490-91. The application was initially denied on March 2, 2017 and on reconsideration on November 13, 2017. AR 490-91, 538, 842. On January 29, 2018, the Appeals Council remanded the case to an ALJ with specific instructions to consolidate all Mr. King's applications, associate the evidence, and issue a new decision on the consolidated claims. AR 534.

On October 9, 2018, Mr. King appeared for a second hearing with attorney representative Scott Rodey, this time before ALJ Michael Leppala. AR 407. ALJ Leppala also heard from VE Melissa Brassfield. AR 382, 407, 693-94. ALJ Leppala issued an unfavorable decision on January 15, 2019. AR 382-98. ALJ Leppala's decision is the final decision of the Commissioner. 20 C.F.R. §§ 404.984, 416.1484. On March 22, 2019, Mr. King timely filed a Complaint seeking judicial review. Doc. 1. The Court reserves discussion of the medical records relevant to this appeal for its analysis.

## APPLICABLE LAW

A.      Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1)      At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2)      At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3)      At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4)      If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5)      If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

---

[3] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. *Id.* Gainful work activity is work activity that you do for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b).

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.    Standard of Review

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence "is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118, or "constitutes mere conclusion," *Musgrave v. Sullivan*,

966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## ANALYSIS

Mr. King argues that the Court should remand because: (1) ALJ Leppala failed to incorporate portions of the medical opinions of state agency psychological consultants, Doc. 18 at 9-12; (2) ALJ Leppala erred by failing to give adequate reasons for rejecting the opinions of treatment providers, *id.* at 12-23; and (3) ALJ Leppala's RFC is not based on substantial evidence because he failed to account for Mr. King's subjective allegations of pain, *id.* at 24-27. In his reply brief, he withdraws the first argument and concedes it. Doc. 24 at 1.

ALJ Leppala rejected or discounted the opinion of every one of Mr. King's treatment physicians (Mital Patel, M.D. and Richard Laughter, M.D.) as well as the opinions of every one of his "other source" providers (LMHC Garry Hallford, PT G. Kirk, and PA-C Carrie Smith). AR 392-94. The Court agrees with Mr. King that the ALJ failed to give legitimate and specific

reasons for discounting Dr. Mital Patel's opinion regarding Mr. King's physical functional

limitations and for discounting Dr. Richard Laughter's opinion regarding Mr. King's non-

exertional limitations. Because Mr. King's remaining arguments may be affected by the ALJ's

treatment of this case on remand, the Court will not address those arguments. *Wilson v.*

*Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

    A.    The Treating Physician Rule

    The ALJ is required to evaluate every medical opinion he receives that could affect the

RFC. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161-62 (10th Cir. 2012); *Doyal v. Barnhart*, 331

F.3d 758, 764 (10th Cir. 2003). For claims filed before March 27, 2017,[4] as the present claim is,

medical opinions are classified into two different categories: "acceptable medical sources" and

"other sources." "Acceptable medical sources" are licensed physicians, licensed or certified

psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language

pathologists. SSR 06-03p, 2006 WL 2329939, at *1; SSR 96-2p, 2017 WL 3928298. "Other

medical sources" include nurse practitioners, physician assistants, licensed clinical social

workers, naturopaths, chiropractors, audiologists, and therapists. SSR 06-03p, 2006 WL

2329939, at *2; SSR 96-2p, 2017 WL 3928298.

    "Medical opinions are statements from physicians and psychologists or other 'acceptable

medical sources' that reflect judgments about the nature and severity of an individual's

impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do

despite the impairment(s), and physical and mental restrictions." SSR 06-03p, 2006 WL

2329939, at *2 (Aug. 9, 2006). Information from "other sources," both medical and non-medical,

---

[4] For claims filed on or after March 27, 2017, all medical sources can provide evidence that is categorized and considered as medical opinion evidence and subject to the same standard of review. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017).

are used to "show the severity of an individual's impairment(s) and how it affects the individual's ability to function." *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007) (citing 20 C.F.R. § 416.902); *see* SSR 06-03p, 2006 WL 2329939, at *2.

A unique two-step rule applies to the opinions of treating physicians (acceptable medical sources who provide or have provided the claimant with medical treatment and who have an ongoing relationship with the claimant). First, the ALJ must determine whether the opinion is entitled to "controlling weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." *Id.* (internal quotation marks omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.* If it is not given controlling weight, "at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

The factors in the regulation are:

(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1331.

The ALJ is not, however, required to "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th

Cir. 2007). Rather, the decision need only be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (internal quotation marks omitted). The Tenth Circuit has also expressed a requirement that the ALJ provide "specific and legitimate reasons" for rejecting an opinion. *Doyal*, 331 F.3d at 764; *Watkins*, 350 F.3d at 1301. The ALJ's reasons are reviewed for substantial evidence. *Doyal*, 331 F.3d at 764.

B.      The ALJ's Decision

At step one, the ALJ found that Mr. King's earnings during 2013 and 2017 were greater than the substantial gainful activity ("SGA") limit. AR 385. Nonetheless, he found the earnings "not to be dispositive because [Mr. King] is denied at a later step in the sequential evaluation process." *Id.* At step two, he found that Mr. King has the following severe impairments: status-post total replacement of the left hip joint; cervicalgia; bipolar disorder; anxiety; and post-traumatic stress disorder (PTSD). *Id.* At step three, he found that these impairments did not meet or equal a listing. AR 386-87.

At step four, he evaluated the medical evidence and fashioned the following RFC:

> the Claimant is capable of occasionally lifting and/or carrying 20 pounds and
> frequently lifting and/or carrying 10 pounds. The Claimant is capable of standing
> and/or walking about six hours in an eight-hour workday and sitting for about six
> hours in an eight-hour workday, all with normal breaks. The Claimant is further
> limited to occasionally climbing ramps or stairs, never climbing ladders, ropes, or
> scaffolds, and occasionally balancing, stooping, kneeling, crouching, and
> crawling. The Claimant can understand, carry out, and remember simple
> instructions and make commensurate work-related decisions; respond
> appropriately to supervision, co-workers, and work situations; deal with routine
> changes in work setting; and maintain concentration, persistence, and pace for up
> to and including two hours at a time throughout a normal workday. The Claimant
> is limited to occasional interaction with coworkers, supervisors, and the general
> public.

AR 387-88. At step five, the ALJ found that Mr. King can perform the jobs of housekeeping cleaner and small products assembler. AR 396.

As Mr. King argues, this RFC is inconsistent with the opinion of Mr. King's treating physicians, Dr. Mital Patel and Dr. Richard Laughter. Doc. 18 at 16-18. The ALJ was thus required to give "specific" and "legitimate" reasons, supported by substantial evidence, for discounting these two opinions. For the reasons explained below, the Court agrees with Mr. King that the ALJ failed to do so.

C.     The ALJ Erred in His Evaluation of Dr. Patel's Opinion.

Dr. Patel is an orthopedic surgeon who performed Mr. King's hip replacement in March 2018. AR 448-49, 1016. On November 28, 2017, Dr. Patel opined that Mr. King could occasionally (rather than frequently) lift and/or carry 10 pounds. AR 949. He found that in a typical 8-hour workday, Mr. King can sit for 30 minutes, and stand or walk for two hours (rather than six hours each). *Id.* Mr. King can never stoop or crouch (rather than performing such activities occasionally). AR 950. Dr. Patel explained that these opinions are based on Mr. King's "progressive left hip degenerative changes" and his "PT evaluation." *Id.* On the same day, Dr. Patel also found that Mr. King has a moderate limitation in his ability to perform activities within a schedule, maintain physical effort for long periods without a need to decrease activity or pace, or to rest intermittently, to work in coordination with/or proximity to others without being distracted by them, and to complete a normal workday and workweek without interruptions from pain of fatigue based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods due to pain. AR 951. He based this opinion on pain in Mr. King's right shoulder, left hip, and lower back. *Id.*

Dr. Patel's opinion matches that of physical therapist G. Kirk, who completed identical forms and reached identical conclusions on November 27, 2017. AR 945-46. The only difference between G. Kirk's opinion and Dr. Patel's opinion lies in the comments in support of the

assessment: G. Kirk wrote that Mr. King has an arthritic left hip, lower back pain, and elaborated that "due to pain in right shoulder and left hip, patient is unable to carry on a full work day." *Id.*

The ALJ accurately described these two opinions, AR 392-93, but then "g[a]ve little weight to the evaluations by Dr. Patel and physical therapist Kirk." He stated that "they are not consistent with the record as a whole," and gave four examples of inconsistency: (1) "the relatively mild objective findings discussed above"; (2) "the Claimant's use of pain medication only as needed"; (3) "his non-compliance with physical therapy"; and (4) "his post-onset work activity in the roofing and welding fields." AR 393. Mr. King argues that these are neither specific nor legitimate reasons for rejecting these opinions. Under the treating physician rule, the Court agrees that the ALJ did not give legitimate reasons supported by substantial evidence for according "little weight" to Dr. Patel's opinion. The Court considers each of the four proffered reasons in turn.

1. The ALJ erred by relying on cherry-picked "mild objective findings" in the record to reject a medical opinion that is otherwise well supported.

The ALJ found that Dr. Patel's opinion is inconsistent with "the relatively mild objective findings discussed above." AR 393. Although the ALJ does not explain in this paragraph which "mild objective findings" he refers to,[5] the Court views the narrative preceding this statement as containing four pieces of evidence that could be construed as "mild objective findings" with respect to Mr. King's physical health:

---

[5] Contrary to Mr. King's argument, the ALJ is not required to specify which medical findings he relies on in the same paragraph as his discussion of the opinion evidence. Here, the ALJ discussed a variety of clinical findings in his narrative. AR 389-90. That initial discussion may serve as a foundation for the ALJ's evaluation of the opinion evidence. *Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) ("The ALJ set forth a summary of the relevant objective medical evidence earlier in his decision and he is not required to continue to recite the same evidence again in rejecting Dr. Wright's opinion.").

- Dr. Markus Hamm indicated on March 5, 2012 that Mr. King had no extremity tenderness and full range of motion in all extremities. There was no extremity edema or calf tenderness. AR 389 (citing Exhibit 6-F, p. 6 [AR 318]).

- Mr. King's MRI results on September 9, 2015 showed a degenerative disc at C5-C6, but no significant evidence of stenosis. AR 389-90 (citing Exhibit 17-F, p. 10 [AR 798].

- On December 4, 2015, CNP Keri Black reported that Mr. King's gait and cervical spine[6] were normal and reflex function was normal. AR 390 (citing Exhibit 16-F, pp. 13-14 [AR 771-72]).

- On July 12, 2018, Dr. Aedra Andrade reported that Mr. King's pain was improving and he was working with a physical therapist. AR 390 (citing Exhibit 31-F, p. 15 [AR 1027]).

Although the ALJ's consideration of these "mild objective findings" was permissible, his failure to also consider evidence that supported Dr. Patel's opinion was not. For instance, Dr. Patel's opinion is consistent with the only other opinion in the record from a treating source with respect to Mr. King's physical functional limitations (physical therapist Kirk's opinion, AR 945-46).[7] Second, as Mr. King points out, the ALJ failed to acknowledge a variety of objective medical findings in the record that document Mr. King's muscle tenderness and pain (especially in Mr. King's right shoulder, left hip, and lower back), and an irregular gait:

- In September 2012, Nurse Practitioner Wendee Burnett documented "mild to moderate" spasms in the muscles of Mr. King's back. AR 336-37.

---

[6] The cited record does not support this finding. The physical exam describes Mr. King's gait as normal, but his cervical spine as "tender" with a "moderate pain" on range of motion test—not normal. AR 771. The ALJ's mischaracterization of the record is an additional reason for reversal.

[7] The Commissioner correctly points out that therapist Kirk is not an "acceptable medical source" as defined by social security regulations. Doc. 23 at 20; SSR 06-03p, 2006 WL 2329939, at *1-2. Although therapist Kirk's opinion is therefore not entitled to controlling weight, the ALJ must still consider it, as he did. The Court does not find that the ALJ erred with regard to his evaluation of the opinion of therapist Kirk; instead, the Court finds that, before rejecting Dr. Patel's opinion, the ALJ was required to consider that both people who treated Mr. King and considered the limiting effect of Mr. King's shoulder, hip, and lower back issues reached the same conclusion.

- In January 2015, Dr. Conrad Clayton documented pain with range of motion testing in his left hip, diagnosed him with "Left Hip Bursitis," and administered an injection. AR 817-19.

- In August 2015, CNP Black's exam revealed a decreased range of motion in his neck and right shoulder. AR 802-04.

- In October 2015, Dr. Evan Knaus documented decreased range of motion and/or tenderness in his neck and lower back, and diagnosed "Chronic and progressive rotational based neck pain in the setting of a degenerative disc C5-C6"; "Bilateral hand paresthesias"; and "Axial lower back pain." AR 796-98.

- In November 2015, Dr. Knaus documented a restricted range of motion in his right shoulder. AR 844.

- In January 2016, Dr. Knaus documented low back tenderness and pain with range of motion testing in his hips. AR 840-41.

- In November 2016, Dr. Niyati Patel found tenderness and limited range of motion in his lower back and hip. AR 883-84.

- In January and October 2017, Dr. Andrade documented limited range of motion in the right shoulder, left hip, and lower back. AR 868, 925.

- In July 2018, Dr. Andrade documented limited ambulation and an irregular gait. AR 1026.

*See* Doc. 24 at 3 n.3.

Further corroborating Mr. King's complaints about his hip and shoulder is the fact that he had a hip replacement and a shoulder surgery in 2018. Although the ALJ noted these surgeries occurred, he did not recognize them as objective medical evidence that supports Dr. Patel's opinion about how the lack of mobility and pain in Mr. King's hip and shoulder limited his ability to perform various functions. The ALJ may not simply ignore this evidence when evaluating whether the medical evidence supports the opinion of a treating physician. *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a

treating physician's opinion outright[8] only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." (internal quotation marks omitted)); *cf. Langley v. Barnhart*, 373 F.3d 1116, 1120-21 (10th Cir. 2004) (an ALJ may not reject a treating physician's opinion as being "wholly unsupported" by the medical record when there are actually "conflicts in the medical evidence").

Compounding the error, the ALJ appears to have relied on his own lay speculation when evaluating the significance of the MRI results showing a degenerative disc but no stenosis. Dr. Patel's opinion does not explicitly rely on a diagnosis of spinal stenosis, and the ALJ cannot speculate as to whether Dr. Patel knew about the MRI results. *See Newton v. Berryhill*, No. 1:16-CV-01130 SCY, 2018 WL 4684243, at *5 (D.N.M. Sept. 29, 2018) ("The ALJ is not a doctor and so it would be improper for the ALJ to reach this conclusion based on his independent assessment of the x-rays.").

More significantly, as Mr. King points out, the ALJ deferred to the opinions of the state agency examiners over the opinion of Dr. Patel. But Social Security Regulations disfavor elevating the opinion of an examining physician over the opinion of a treating physician. Doc. 18 at 23; *see* 20 C.F.R. § 404.1527(c)(2) (the agency gives more weight to medical opinions from treating sources). Reasons to place the opinion of a treating physician over the opinion of an examining physician are particularly strong in this case, where the opinion of the treating physician is also the most current opinion. In issuing his opinion in late November 2017, Dr. Patel was able to consider the variety of evidence in the 2015 through 2017 medical records described above. In contrast, the state agency physicians issued their evaluations in April and August of 2013. AR 67-71, 78-82. Thus, unlike Mr. King's treating physician, they could not

---

[8] As Mr. King correctly observes, according "little weight" to an opinion is the same as rejecting it outright. Doc. 18 at n.12 (citing *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012)).

have surveyed the record evidence developed from August 2013 onwards. That is why more recent examinations are generally of more significance in fashioning the RFC. *Jaramillo v. Colvin*, 576 F. App'x 870, 874 (10th Cir. 2014).

Finally, the Court rejects the Commissioner's invitation to consider "mild objective findings" in the record that the ALJ does not appear to have considered in the first instance. *See* Doc. 23 at 13-14 (discussing medical evidence of record that could be construed as "mild objective findings"). To the extent the ALJ considered any "mild objective findings," the Court has addressed it above. To the extent the ALJ did not consider the particular "mild objective findings" the Commissioner now identifies after-the-fact, the Court declines to do so in the first instance. "The ALJ's decision should [] be[] evaluated based solely on the reasons stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). Although the Court must consider the entire medical record to determine if the ALJ's decision is supported by substantial evidence, it is not free to use medical records the ALJ did not discuss to engage in post hoc rationalization that supports the ALJ's decision. *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("this court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself"). In other words, the Court cannot pull records the ALJ never considered in an effort to justify the ALJ's ultimate conclusion.

2.  The ALJ's finding regarding pain medication is not substantial evidence.

The ALJ determined that Mr. King's acknowledgment that he "uses pain medication only as needed," AR 393, and a treatment record by Dr. Andrade establishing that Mr. King "was only using pain medications on an as needed basis," AR 390 (citing Exhibit 31-F, p.15 [AR 1027]), undermine Dr. Patel's opinion that Mr. King's pain limits his physical abilities. The ALJ made too much of this evidence. First, the ALJ neglected to note that, in using pain medication as needed, Mr. King was simply following Dr. Andrade's instructions. AR 1027 ("Patient

Instructions . . . Use anxiety and pain medication only as needed."). Second, at the hearing, Mr. King testified: "I'm always in pain. I'm in constant pain. You know, I try not to rely on the pain pills so I just deal with it." AR 432. He later added: "I'm trying not to use the pain medication but if it gets to the point where I can't tolerate it no more, then I will take it." AR 442. That a person might choose to suffer with pain rather than choose to maintain a steady diet of addictive pain medication does not, without more, negate a treating physician's opinion about how that pain limits a person's physical abilities.

The Commissioner cites 20 C.F.R. § 404.1527(c)(4) as support for the ALJ's decision regarding pain medication, which states: "Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." Doc. 23 at 15. As the Court observed above, Dr. Patel's opinion is consistent with substantial evidence in the medical record. Section 404.1527(c)(4), therefore, cannot be used to justify the ALJ's decision to give Dr. Patel's opinion little weight.

The Commissioner also cites *Castellano v. Secretary of Health & Human Services*, 26 F.3d 1027, 1029 (10th Cir. 1994), for the proposition that a "claimant's limited use of pain medications was inconsistent with a treating physician's opinion that the claimant was totally disabled." Doc. 23 at 15. In *Castellano*, "Plaintiff testified to minimal use of pain medication ranging from needing no pain medication at all to taking such medication a maximum of twice a day." 26 F.3d at 1029. By contrast, here, the ALJ did not ask Mr. King specific enough questions to determine the quantity of pain medication he takes in a typical day. Nor did the ALJ cite to instructions from a physician that are inconsistent with the amount of medication Mr. King takes. *Castellano* therefore cannot be used to justify affirmance.

The Court agrees that an ALJ can properly consider whether a claimant is taking pain medication in deciding the extent to which pain limits the claimant's activities. When a claimant's treating physician offers an opinion about the limiting effects of the claimant's pain that is uncontradicted by any other medical evidence, however, the ALJ cannot simply disregard this opinion by unilaterally deciding that, if the treating doctor's opinion was valid, the claimant should have been taking pain medication more regularly.

3.   <u>The ALJ did not correctly analyze Mr. King's non-compliance with physical therapy.</u>

The ALJ's third reason for rejecting Dr. Patel's opinion came from an April 2016 note stating Mr. King was discharged from physical therapy for failing to attend appointments. AR 390 (citing Exhibit 29-F [AR 1006-07]). The Court agrees that missed physical therapy is something an ALJ can consider. But if an ALJ's decision relies on a claimant's failure to follow a doctor's orders, he must assess the following factors: "(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse." *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987).

The ALJ did not examine any of these factors. He asked Mr. King whether physical therapy helped but did not ask Mr. King whether or why he refused to continue going to physical therapy. AR 429, 442. He did not discuss whether Dr. Patel prescribed physical therapy, whether Dr. Patel's opinion depended on Mr. King's participation in physical therapy, or whether physical therapy was likely to restore Mr. King's ability to work. This was error. *See Robinson v. Barnhart*, 366 F.3d 1078, 1083-84 (10th Cir. 2004) ("Moreover, the ALJ's speculative conclusion is procedurally and legally deficient because he did not make the findings necessary to deny the claim on the basis of claimant's noncompliance with prescribed treatment, nor did he

give claimant or her treating physician an opportunity to explain the specific reasons for her failure to take medications to determine if justifiable cause existed for her failure.").

Further, the ALJ failed to sufficiently analyze the record evidence showing that Mr. King returned to physical therapy after Dr. Patel ordered it in November 2017 (AR 961). For instance, the ALJ did not acknowledge physical therapy notes from July 2018 at Rehoboth McKinley Hospital or Mr. King's testimony in October 2018 that he had just "finished" physical therapy after doing it for almost a year. AR 429; AR 1028-30. Instead, except for acknowledging a remark by Dr. Andrade in July 2018 that Mr. King was attending physical therapy, AR 390 (citing Exhibit 31-F, p.15 [AR 1027]), the ALJ ignored the record evidence indicating that Mr. King returned to physical therapy as instructed.

Thus, while the ALJ appropriately considered as a factor in his decision that some time existed during which Mr. King chose not to attend physical therapy, the ALJ erred in not considering the *Frey* factors listed above. Further, even if consideration of the *Frey* factors weighed against Mr. King as applied to the period of physical therapy he missed, considering the record as a whole, that missed physical therapy provides an insufficient basis to reject Dr. Patel's opinion when Mr. King returned to physical therapy after Dr. Patel instructed him to do so. Finally, the Commissioner justifies the failure-to-attend-physical-therapy argument in the ALJ's decision with a citation to 20 C.F.R. § 404.1527(c)(4), which provides that "the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." Doc. 23 at 15. This argument is unpersuasive in light of the ALJ's failure to discuss record evidence that is in fact consistent with Dr. Patel's opinion, as described above. In addition, the Commissioner provides no citation to cases that support his argument. Doc. 23 at 15.

4.     Mr. King's post-onset work activity in the roofing and welding fields, although relevant, is insufficient to support ALJ's decision.

The ALJ also indicated that Mr. King's post-onset work activity undermined Dr. Patel's conclusion that he cannot carry out a full workday. AR 390. After his date of onset, Mr. King worked for a roofing company for 3 months and as a welder for approximately 6 months. AR 385, 415, 417. Mr. King argues that, before relying on this work to reach a finding of nondisability, the ALJ was required to evaluate whether this activity constituted unsuccessful work attempts under the Administration's own rules. Doc. 18 at 17-18.

SSR 84-25 defines an "unsuccessful work attempt" as "as an equitable means of disregarding relatively brief work attempts that do not demonstrate" ineligibility for the payment of disability benefits. 1984 WL 49799, at *1 (1984). An unsuccessful work attempt must be for a period of 6 months or less. *Id.* This work may "be disregarded if it is discontinued or reduced . . . after a short time because of the person's impairment or the removal of special conditions related to the impairment that are essential to the further performance of work." *Id.* at *2. The ruling explains:

> In considering why a work effort ended or was reduced to the non-SGA level, we do not rely solely on information from the worker. Therefore, if impartial supporting evidence is not already a part of the claims file, confirmation with the employer is required. If the information from the employer is inconclusive or if none is available, the reason for work discontinuance or reduction may be confirmed with the person's physician or other medical source. After being apprised of the circumstances, the physician or other medical source could state whether, in his or her opinion or according to the records, the work discontinuance or reduction was due to the impairment.

*Id.* at *3.

On its face, SSR 84-25 applies to step one rather than the RFC calculation, but some courts have applied this analysis at step four. *Kilinshi ex rel. Kilinski v. Astrue*, 430 F. App'x 732, 738 (10th Cir. 2011); *Brown v. Colvin*, No. 15-CV-0259 SMV, 2016 WL 10179305, at *5

(D.N.M. July 6, 2016); *see also* SSR 96-8p, 1996 WL 374184, at *5 (the RFC assessment must be based on all relevant evidence, including "[e]vidence from attempts to work"). Mr. King testified that he was let go from the welding job because he missed too many days of work due to his medical condition. AR 51. There is no evidence from his employer in the record, and Dr. Patel's opinion does not discuss his employment as a roofer or welder, so there is no indication that the ALJ followed SSR 84-25.

Nonetheless, the Court agrees that evidence about what a claimant can do informs what a claimant cannot do. Further, to the extent a doctor opines that a claimant is unable to do something the record demonstrates a claimant actually can do, an ALJ may consider this in evaluating the doctor's opinion. Here, however, the record merely demonstrates that Mr. King's attempts to work in the fields of roofing and welding were unsuccessful. The fact that Mr. King did not continue to perform this type of work limits the extent to which his attempt to engage in this work undermines his claims. *See Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) ("The sporadic performance of . . . work does not establish that a person is capable of engaging in substantial gainful activity." (alterations and internal quotation marks omitted)); *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) ("Working for an hour or so as a janitor in an intermittent fashion is not inconsistent with complaints of pain").

Notably, the ALJ did not conclude that Mr. King can perform this type of work. Instead, he concluded the opposite. First, he explicitly found that Mr. King cannot perform his past relevant work as a welder or construction worker. AR 395. Second, the RFC foreclosed the possibility that Mr. King could work as a roofer. AR 387-88 (limiting claimant to only occasionally lifting and/or carrying 20 pounds; only occasionally climbing ramps, stairs, ladders, and scaffolds; and only occasionally balancing, stooping, kneeling, crouching, and crawling).

The ALJ's determination that Mr. King is incapable of working as a welder or roofer limits the significance of Mr. King's attempts to do so.

Moreover, Mr. King's apparent ability to do this type of work for a short period cannot rectify the ALJ's failure to adequately consider the opinions of Dr. Patel, who served as Mr. King's treating physician. Similarly, even combining consideration of Mr. King's unsuccessful work attempts with consideration of the period during which Mr. King chose not to attend physical therapy and with his decision not to continually take pain medication, the ALJ had an insufficient basis to reject the opinion of Dr. Patel regarding Mr. King's limitations. As Mr. King's treating physician, his opinion was entitled to greater deference than the ALJ provided it, or at least a greater explanation for not giving it more deference.

      D.      <u>The ALJ Erred in His Evaluation of Dr. Laughter's Opinion.</u>

On January 30, 2018, treating psychiatrist Richard Laughter, M.D. opined that Mr. King has marked limitations in the following work-related abilities:

- understand and remember detailed instructions;
- carry out detailed instructions;
- maintain attention and concentration for extended periods of time (i.e. 2-hour segments);
- perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance;
- sustain an ordinary routine without special supervision;
- work in coordination with/or proximity to others without being distracted by them;
- complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods;
- interact appropriately with the general public;
- accept instructions and respond appropriately to criticisms from supervisors;
- get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
- maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness;
- respond appropriately to changes in the workplace; and

- set realistic goals or make plans independently of others.

AR 953-54.

In his decision, ALJ Leppala "g[a]ve little weight" to Dr. Laughter's opinions, "since they are not consistent with the record as a whole, including the mental status examinations in the Claimant's treatment records and Dr. Adams' consultative examination report as discussed in detail above, his good response to medication, and his daily activities, including his post-onset work activity and his ability to attend college (CNM) after his alleged onset date." AR 393-94. In contrast to the little weight the ALJ gave Dr. Laughter's opinion, the ALJ gave "significant weight" (AR 392) to the opinion of Dr. Adams. Although the ALJ may have reasonably used Dr. Adams' report to discount Dr. Laughter's opinion in some areas, Dr. Adams' opinion cannot undermine that of Dr. Laughter for issues on which the two doctors agree. And, as Mr. King points out, the doctors agree with each other in one important area. Doc. 18 at 17.

Dr. Laughter assigned marked limitations in interacting with the public, coworkers, and supervisors, and Dr. Adams opined that Mr. King "has moderate to severe limitations interacting with co-workers, supervisors and the public." AR 858, 953-54. The ALJ acknowledged that this was part of Dr. Adams' opinion, but did not say whether he was accepting or disregarding that portion of Dr. Adams' opinion. AR 392. Given that the ALJ gave significant weight to Dr. Adams' opinion, however, the Court would expect the ALJ to either account for these limitations in assessing Mr. King's RFC or explain why he was not doing so.

Absent a justifiable explanation for not taking these limitations into account, not accounting for them in the RFC constitutes error. The ability to "accept instructions and respond appropriately to criticism from supervisors" and "[t]he ability to get along with coworkers or peers without (unduly) distracting them or exhibiting behavioral extremes" are both critical to

the performance of any work. POMS § DI 25020.010, § B(2)(c).[9] Despite the "marked" and "moderate to severe" limitations Drs. Laughter and Adams assessed Mr. King to have in interacting with co-workers, supervisors, and the public, the ALJ failed to explain his assessment that Mr. King could "occasionally interact with coworkers, supervisors, and the public." AR 399. "Occasional" means up to one-third of the workday. SSR 96-9p, 1996 WL 374185, at *3. Doing an activity for up to a third of the day typically would be inconsistent with a marked/severe limitation in that activity. If the ALJ thought that Mr. King, despite being markedly or severely limited in his ability to interact with others, could still do so for up to one-third of the workday, he was required to explain why. Because the ALJ did not offer any such explanation, let alone recognize that Dr. Adams and Dr. Laughter agreed on these limitations, the rejection of Dr. Laughter's opinion is not supported by substantial evidence.

## CONCLUSION

The ALJ's stated reasons for disregarding the opinions of Drs. Patel and Laughter were insufficient, both alone and in the aggregate. The Court must therefore remand this case for further consideration. Mr. King's Motion to Reverse and Remand for a Rehearing With Supporting Memorandum, Doc. 18, is GRANTED.

_Steve Yarbrough_
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE
Presiding by consent

---

[9] The Social Security Administration Program Operations Manual System ("POMS") is "a set of policies issued by the Administration to be used in processing claims." *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999). The reviewing court will defer to the POMS provisions unless they are arbitrary, capricious, or contrary to law. *Ramey v. Reinertson*, 268 F.3d 955, 964 n.2 (10th Cir. 2001); *see also Vigil*, 805 F.3d at 1204 (relying on the POMS' definition of unskilled work).